# United States District Court, Northern District of Illinois ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2192 | **DATE** | 10/24/2002 |
| **CASE TITLE** | Michael Koswenda vs. Flossmoor School District No. 161 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs are awarded attorney's fees and costs in the amount of $18,000.00. The Clerk of the Court shall enter a judgment in favor of the Plaintiffs and against the District in the amount of $18,000.00 for attorney's fees and costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | Document Number |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | OCT 2 5 2002 | |
| | Notified counsel by telephone. | | | date docketed | 26 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 10/23/2002 | |
| DK | courtroom deputy's initials | 02 OCT 24 FH 3:29 | Date/time received in central Clerk's Office | date mailed notice DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KOSWENDA, and his parents and next friends, MATTHEW and THERESA KOSWENDA, )))) | |
| ) | Case No. 02 C 2192 |
| Plaintiffs, ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| FLOSSMOOR SCHOOL DISTRICT ) NO. 161, )) | |
| Defendant. ) | |

DOCKETED

OCT 2 5 2002

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Michael Koswenda through his parents ("Plaintiffs") initiated this federal action to recover attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B) as a prevailing party arising out of an administrative proceeding brought against Flossmoor School District No. 161 ("District" or "Defendant") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.* This case is currently before the court for decision as a trial on the papers. Oral argument was held on October 17, 2002. The parties present the issue of whether Plaintiffs are entitled to recover some or all of their attorney's fees and costs incurred in the administrative hearing. This cases raises the following issues for decision: 1) whether Plaintiffs were prevailing parties pursuant to 20 U.S.C. § 1415(i)(3)(B);



2) whether the Plaintiffs' success is purely technical or *de minimis*; and 3) what constitutes a reasonable fee for the results achieved. The following constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND FACTS

Michael Koswenda is a thirteen year-old boy who experiences problems in school and is eligible for services under the IDEA. Complaint ¶ 3, 4. Through the spring of 1999, Michael attended the Rush Day School when his mother, Theresa Koswenda, requested a transfer to Acacia. D&O at 20.[1] An individual education plan ("IEP") was completed in June of 1999, and Michael transferred to Acacia on a conditional basis that summer. *Id.* The school determined almost immediately that Michael could not stay, but agreed to allow him to attend for the duration of the summer. *Id.*

Faced with trying to find another school, Michael's parents had concerns about sending him to the St. Gerard's / SPEED Coop school ("SPEED"); accordingly in the fall of 1999 Michael began attending half days at the Parker Junior High School. After learning more about SPEED, Michael's parents decided that it was an appropriate placement and transferred him there during the 1999-2000 school year. Michael attended the SPEED extended school year program ("ESY") in the summer of 2000. At the time of his placement

---

[1] D&O refers to the Decision and Order of Hearing Officer Ann Breen-Greco dated November 26, 2001.

at SPEED, Michael's diagnosis was obsessive compulsive disorder and learning disability. *Id.*

In August 1999, Dr. Michelle Metrick recognized autistic-like behavior in Michael. Dr. Metrick referred Michael to Dr. Bennett Leventhal whose waiting list was over a year. While waiting to be seen be Dr. Leventhal, Michael was seen by Dr. Valerie Scaramella Nowinski who diagnosed him with autism in November of 1999. Dr. Nowinski also referred the parents to Dr. Juan Valdivia, a psychiatrist. Dr. Valdivia changed Michael's diagnosis several times from March 2000 to May 2000.

During the summer of 2000, the District and Plaintiffs met for a mediation session and a multi-disciplinary conference ("MDC"). D&O at 35. At the MDC, the District rejected Dr. Nowinski's diagnosis of autism because it did not find her report acceptable. D&O at 37. The District then sought an evaluation from Dr. Leventhal. D&O at 36. The District accepted Dr. Leventhal's November 2000 diagnosis of autism and mild mental retardation. *Id.*

In September 2000, Dr. Valdivia indicated that he did not think the SPEED school was an appropriate placement for Michael and suggested that Michael remain on home-bound education for four to six weeks while he stabilized with new medication. D&O at 21, 25. Michael's parents withdrew him from SPEED in October without consulting the District. D&O at 21. Michael remained on home-bound instruction until February 2001 when he began attending the ECHO school. D&O at 36. During that time he received tutoring

3

instruction from Judith McCormick of the Learning Clinic. D&O at 37. Michael currently attends the ECHO school. D&O at 38.

## A. ISSUES RAISED BEFORE INDEPENDENT HEARING OFFICER.

Plaintiffs originally requested a due process hearing in June of 2000. D&O at 1. For various reasons the hearing was not held until September and October of 2001. D&O at 3. Plaintiffs raised eight issues before the independent hearing officer ("IHO"), principally alleging that the District denied Michael a free appropriate public education ("FAPE") for various reasons. First, Plaintiffs alleged that the District denied a FAPE by failing to evaluate the student's unique needs after it had notice of behaviors likely to indicate a disability. D&O at 30. Second, The District denied a FAPE before and after the student's placement at Parker by failing to consider the August 1999 report recommending an evaluation with Dr. Leventhal, by not creating an appropriate IEP, by not providing the student with a full-day educational program at Parker, and by failing to provide a full-time aide. D&O at 32. Third, the district violated the procedural requirements and denied a FAPE by discounting the Neuropsychology Diagnostic Center ("NDC") report at the May 2000 IEP meeting, and by requiring the parents to produce an NDC representative as a prerequisite to its consideration of the NDC report. D&O at 33. Fourth, the district intentionally violated the mediation agreement and denied a FAPE at the August 2000 MDC by discounting the parents' representatives to the IEP and discounting the NDC evaluation, by refusing to consider or address the services, program, and placement required by the mediation

4

agreement. D&O at 35. Furthermore, the District's actions exhibited deliberate indifference. *Id.* Fifth, the district denied a FAPE by failing to provide Plaintiffs with an opportunity to participate in the formulation of a FAPE when it failed to provide prior written notice of proposed or refused changes in evaluation, programming, or placement, when it failed to follow the IEP after notice that SPEED was inappropriate, when it failed to reconvene the IEP in response to the student's needs, and when it failed to provide appropriate home-based instruction. D&O at 37. Sixth, the District denied the student a FAPE in the summer of 2001 by failing to provide his parents with a response to specific proposals for additional ESY services, by failing to inform them of the start date and duration of ESY program, and by limiting the duration and type of extended school year ("ESY") services after notice of the student's needs. D&O at 39. Seventh, the District intentionally or recklessly discriminated against Michael because of his disability or his parents' advocacy. Eighth, the District denied a FAPE after receiving the NDC report by failing to provide appropriate IEPs, and withholding special education services. D&O at 40.

## B. RELIEF REQUESTED FROM INDEPENDENT HEARING OFFICER.

Plaintiffs requested fourteen items of relief. First, Plaintiffs requested a finding of deliberate indifference. D&O at 40. Second, they requested an order for procedural safeguards. D&O at 41. Third, they requested reimbursement for the NDC diagnosis and charges. D&O at 42. Fourth, Plaintiffs requested reimbursement for the expenses related to the Learning Clinic (Ms. McCormick's services). D&O at 43. Fifth, they requested an order

for outside social language programming. *Id.* Sixth, they requested an order for outside social language therapy. D&O at 43-44. Seventh, they requested an order that Michael has the need of year-round social interaction and skills services. D&O at 44. Eighth, Plaintiffs requested an order for year-round social skills training and therapy. *Id.* Ninth, they requested that an IEP be convened and that the District provide full-day summer services. D&O at 45. Tenth, they requested an order for outside parent training. *Id.* Eleventh, they requested an order for provision of outside counseling. D&O at 46. Twelfth, they requested an order for compensatory education. *Id.* Thirteenth, Plaintiffs requested an order for appropriate related services. D&O at 47. Finally, Plaintiffs requested an order requiring the District to convene a new IEP meeting and create a new IEP with the aid of an educational consultant with expertise in autism. D&O at 48.

## C. SUMMARY OF INDEPENDENT HEARING OFFICER'S DECISION.

The independent hearing officer ("IHO") did not find that the District had denied the student a FAPE on any ground alleged, D&O at 32-34, 36-39, and found no deliberate indifference or violation of the mediation agreement. D&O at 35, 36, 39. However, the IHO did grant the parent partial relief on several items. D&O at 35, 37, 38. Plaintiff then petitioned this Court for attorney's fees under the prevailing party provision of the IDEA.

## III. JURISDICTION

This Court has jurisdiction to adjudicate the fee petition based on 20 U.S.C. § 1415(i)(3)(A). This subsection provides: "The district courts of the United States shall have

jurisdiction of actions brought under this section without regard to the amount in controversy." Federal courts have jurisdiction over independent attorney's fees suits resulting from an IDEA administrative proceeding. *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 381-82 (7th Cir. 2000) (citing *Brown v. Griggsville Cmty. Unit. Sch. Dist. No. 4*, 12 F.3d 681, 683-84 (7th Cir. 1993)).

## IV. LEGAL STANDARDS

### A. TRIAL ON THE PAPERS.

Although originally presented as a motion for summary judgment, the parties have agreed to proceed with a trial on the papers. Each has submitted briefs, declarations, and exhibits, including the Decision and Order of the hearing officer which constitute the record in this case. A district court may conduct a summary bench trial "based on the record compiled in summary judgment proceedings" if the parties so stipulate and indicate a waiver of a full bench trial. *Acuff-Rose Music, Inc., v. Jostens, Inc.*, 155 F.3d 140, 142 (2nd Cir. 1998) (citing *May v. Evansville-Vanderburgh Sch. Corp.*, 787 F.2d 1105, 1115-16 (7th Cir. 1986). This Court has previously conducted a trial on the papers. *See, e.g., Binder v. Bristol-Myers Squibb, Co.*, 184 F. Supp. 2d 762 (N.D. Ill. 2001); *Bosco v. Chicago Transit Authority*, 164 F. Supp. 2d 1040 (N.D. Ill. 2001); *Nolan v. City of Chicago*, 125 F. Supp. 2d 324 (N.D. Ill. 2000); *see also*, Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, FEDERAL LAWYER, August 1999, at 30; *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (stating that where the judge

decides case based on a stipulated record the procedure is "more akin to a bench trial than to a summary judgment ruling"). The parties have agreed to proceed in this manner and waive their right to present oral testimony on the issues herein presented.

## B.   PREVAILING PARTY STATUS

In an action under the IDEA "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Congress has authorized the award of attorney's fees to the "prevailing party" in numerous statutes, and the Supreme Court has interpreted these fee shifting provisions consistently. *Buckhannon v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602 n.4 (2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)). The term "prevailing party" under the IDEA has the same general meaning as under 42 U.S.C. § 1988, concerning civil rights litigation. *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 468 (7th Cir. 1996).

### 1.   Hensley

The Supreme Court's definition of the term "prevailing party" has evolved over the years, and a review of the leading cases is instructive. In *Hensley v. Eckerhart*, the Court recognized that the standard for determining whether a party was the prevailing party "has been framed in various ways." 461 U.S. 424, 433 (1983). The Court noted that

> [a] typical formulation is that 'plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' This is a generous formulation that brings the plaintiff only across the

statutory threshold.

*Id.* at 433 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir. 1978). Once the party has reached this "threshold," the degree of success is a crucial factor in determining whether the fees requested are reasonable; thus, where the claims are distinct, time spent on an unsuccessful claim should not be included. *Id.* at 440. In addition, where the plaintiff achieves only limited success, the "court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.*

### 2. Garland

The determination of whether a party prevailed was the subject of a circuit split. Some circuit's required a party to succeed on a "central issue" in the litigation in order to prevail, while others used a less rigorous standard requiring only that the party succeed on a significant issue and recover some of the relief sought in the litigation. *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 784 (1989). *Garland* rejected the "central issue" standard and articulated a more lenient standard: "at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792. Furthermore, the Supreme Court held that "a prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Id.* at 790-91. Therefore, success in any part of the proceeding satisfies the requirement under this test. Finally, in articulating

9

the new test, the Court clarified its understanding of the *Henlsey* decision: "*Hensley* does indicate that the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not eligibility for a fee award at all." *Id.* at 790. While this creates a low threshold for prevailing party status, the Court did indicate that purely technical or *de minimis* success was not sufficient to entitle a party to a fee award. *Id.* at 792.

*Garland* arose in the context of a state and local teacher's association's constitutional challenge to a school district's prohibitions of communications between the associations and teachers during the school day. *Id.* at 785. The First and Fourteenth Amendment challenges focused on a school district regulation which prohibited employee organizations access to the school during school hours, prohibited the use of school mail and other internal communication systems by employee organizations, but did permit organizations access to the school before or after school hours only with the prior request and approval of the principal. *Id.* In the district court, the plaintiffs prevailed on only the last issue: that the prior approval of the principal for organization meetings after school hours was unconstitutionally vague. *Id.* at 786.

The appellate court reversed in part, finding also that the prohibition of teacher-to-teacher discussions of employee associations during the day and the prohibition against use of inter-office mail was unconstitutional. The district court and Fifth Circuit held that this partial success was not enough under the "central issue" test for prevailing party status

10

because the plaintiffs did not obtain the primary relief sought. *Id.* at 787. Both courts characterized the central issue as the constitutionality of the school district's limitation of school access to representatives during school hours. *Id.* Since they did not win on this primary issue, the teacher's association was not the prevailing party and was not entitled to recover its attorney's fees.

The Supreme Court reversed and determined that the teacher's association was the prevailing party despite winning only on peripheral issues. *Id.* at 792. The Supreme Court noted that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-93. Even minor relief may be the basis for an attorney's fee award under § 1988, however, the success must be more than technical or *de minimis*. The Court recognized, that had the association won on only the issue regarding prior approval of the principal for meetings after school hours, its success would be characterized as *de minimis* and it would not be entitled to attorney's fees. *Id.* at 792. Thus, a party need not prevail on the primary issue in the litigation to recover attorney's fees but must at a minimum be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.

### 3. Farrar

Later, in *Farrar v. Hobby*, the Supreme Court reaffirmed its characterization of the prevailing party inquiry. 506 U.S. 103 (1992). *Farrar* also dealt with an action for

attorney's fees under § 1988, after the plaintiff won a civil rights jury verdict of only one dollar in nominal damages, but not the $17,000,000 it sought in compensatory damages. 506 U.S. 103, 107. The Farrars were not given the monetary, declaratory, or injunctive relief they requested. *Id.*

The Supreme Court used a two-part analysis to determine that the Farrars were the prevailing party, but still not entitled to recover attorney's fees. Referring to its earlier rulings, the Court determined that a party prevails if he materially alters the legal relationship of the parties. *Farrar*, at 111. Furthermore, a "judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113. Thus, prevailing party status "does not turn on the magnitude of the relief obtained." *Id.* at 114. Under this rubric, the Court determined that the nominal damage award was sufficient to make the Farrars the prevailing party. But this did not end the inquiry.

The second part of the inquiry is whether the award of attorney's fees is reasonable. The Court relied on *Hensley* and other cases to affirm that a court must consider the "relationship between the extent of success and the amount of the fee award." *Id.* at 115-16 (quoting *Hensley*, 461 U.S. at 438). The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 114 (citing *Hensley*, 461 U.S. at 436). In the context of private litigation for damages, the primary consideration

12

is the amount of damages awarded as compared to the amount sought. *Id.* Thus, where a party recovers only nominal damages, because he fails to prove actual monetary damages "the only reasonable fee is usually no fee at all." *Id.* at 115.

*Farrar* makes it clear that the determination of whether a party is entitled to attorney's fees includes two distinct steps: 1) whether the party has prevailed, and 2) the degree of success obtained. Justice O'Connor's concurrence suggested a three-part analysis for determining a reasonable fee: (1) the difference between the amount recovered and the damages sought, (2) the significance of the legal issues on which the plaintiff has prevailed, and (3) the public purpose of the litigation. *Id.* at 121-22.

### 4. Buckhannon

Most recently, the Supreme Court held that a party can not be a prevailing party without a court ordered change on the defendant's behavior and rejected the catalyst theory as a basis for recovery of attorney's fees. *Buckhannon Board and Care Home, Inc., v. West Va. Dept. of Health and Human Resources*, 532 U.S. 598, 610 (2001). Where a party files a suit or takes other action that is a catalyst for a voluntary change by the opposing party, he is not a prevailing party even though his actions achieved his goal. *Id.* at 605. Thus, judgments on the merits and court-ordered consent decrees are the primary basis for prevailing party status. *Id.* at 604.

*Buckhannon* arose after an operator of assisted living homes failed a state fire inspection because its residents were not capable of "self preservation." *Id.* at 600. The

operator received cease and desist orders, then subsequently filed suit in the district court. *Id.* 600-01. The suit alleged that the "self preservation" requirement violated the Fair Housing Amendments Act and the Americans with Disabilities Act. *Id.* at 601. Some time after the suit was filed, the state legislature eliminated the requirement from the statute and the case was dismissed as moot. *Id.* The plaintiff sought attorney's fees under the catalyst theory which indicates that "a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* (internal quotation omitted).

As noted above, the Court ultimately determined that this was not a valid basis for an attorney's fee award. In so doing, the Court held,

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

*Id.* at 605. After *Buckhannon*, prevailing party status must be based on the relief sought and recovered by judicial order, consent decree or some other judicial *imprimatur*.

In sum, Supreme Court precedent provides that a party may be considered prevailing and may recover attorney's fees even if he does not prevail on all issues or even the central issue in the litigation. Whether a party has prevailed depends not on the magnitude of the success, but only on a court ordered change in the relationship of the parties. The amount of attorney's fees a party may recover is a separate inquiry that includes a primary

14

consideration of the difference in degree of the relief requested and the relief granted. In addition, the Court should consider the significance of the legal issues on which the plaintiff prevailed and the public purpose of the litigation.

## C.    *BUCKHANNON'S* APPLICATION IN THE IDEA CONTEXT.

The Seventh Circuit has not addressed whether *Buckhannon's* requirement of a judicial decree either on the merits or by way of a consent decree applies to the fee shifting provision of the IDEA. Of three district court cases in the Northern District of Illinois, two found that the holding in *Buckhannon* should be applied to the IDEA, and one held that it did not. *Jose Luis R. v. Joliet Township High Sch. Dist. 204*, No. 01 C 4798, 2001 WL 1000734 (N.D.Ill. Aug. 29, 2001) (expanded in *Jose Luis R.*, No. 01C 4798, 2002 WL 54544 (N.D.Ill. Jan. 15, 2002)); *Brandon K. v. New Lenox Sch. Dist.*, No. 01 C 4625, 2001 WL 1491499 (N.D.Ill. Nov. 23, 2001); *but see, TD v. La Grange Sch. Dist. No. 102*, No. 98 C 2071, 2002 WL 31194701 (N.D.Ill. Sept. 26, 2002). In the first *Jose Luis R.* opinion, the court stated that a distinction between *Buckhannon* and the IDEA context was not persuasive because nothing in *Buckhannon* limited the holding only to the ADA and Fair Housing Amendment Act contexts. 2001 WL 1000734, at *1. In the second opinion, the plaintiff argued that a mediation agreement read into the record by the hearing officer should be considered a consent decree for the purposes of determining the prevailing party. 2002 WL 54544, at *3. A consent decree is a "contract of the parties entered upon the record with the *approval and sanction of a court of competent jurisdiction*, which cannot be set aside without the consent

15

of the parties." *Id.* (quoting *Barron's Law Dictionary*, p.97 (1996)) (emphasis in original). The court found no evidence that the hearing officer approved the mediation agreement. *Id.* Furthermore, the court again rejected the argument that *Buckhannon* should be limited to the ADA and FHAA contexts, because the court referred to similar fee shifting statutes including § 1988 throughout the opinion. *Id.* Moreover, the *Buckhannon* opinion states that the Court has "interpreted these fee-shifting provisions consistently . . . and so approach the nearly identical provisions at issue here." 532 U.S. at 603 n.4. Similarly, *Brandon K.* agreed that a distinction in the ADA, FHAA, and IDEA contexts was not persuasive, relying on *Jose Luis* and cases from other circuits. 2001 WL 1491499 at *2 n.2.

In contrast, in *TD*, the court noted significant distinctions in the text and structure of the IDEA from that of the ADA and FHAA. *TD v. La Grange*, No 98 C 2071, 2002 WL 31194701, at *3 (N.D.Ill. Sept. 26, 2002). For instance, the court noted that the IDEA, unlike the FHAA or the ADA, refers to settlement as a basis for fees. *Id.* Subsection 1415(i)(3)(D) provides for a reduction in attorney's fees when the parents reject a reasonable settlement offer. *Id.* In addition, the IDEA provides for fees in certain instances of mediation, and does not exclude settlement among its express instances where fees are prohibited. *Id.* Thus, the court held that once the text, structure, and legislative history of the IDEA is compared with that of other fee shifting provisions, *Buckhannon*, should not be applied to the IDEA. *Id.* at *3.

The Second Circuit applies *Buckhannon* to the IDEA. *J.C. v. Reg'l. Sch. Dist. 10 Bd.*

*of Educ.,* 278 F.3d 119, 125 (2nd Cir. 2002). In *J.C.,* the parties reached an agreement at the

planning placement team ("PPT") meeting (equivalent to an IEP meeting), 278 F.3d at 122,

and jointly requested a hearing for the purpose of adopting the PPT's results into an order.

*Id.* The school district later changed its mind, fearing that reading the order into the hearing

officer's record would render it liable for attorney's fees. *Id.* The parents eventually filed

an action in federal court seeking attorney's fees. *Id.* The district court determined that the

plaintiffs were prevailing parties and awarded attorney's fees. *Id.* at 123. Before the appeal

was taken to the Second Circuit, *Buckhannon* was decided. *Id.* The court noted that the

*Buckhannon* opinion signaled that its application beyond the ADA and FHAA context and

that *Hensley* held the standards "used to interpret the term 'prevailing party' under any given

fee-shifting statute 'are generally applicable in all cases in which Congress has authorized

an award of fees to a prevailing party.'" *J.C.,* 278 F.3d at 123 (quoting *Hensley,* 461 U.S. at

433 n.7).

The Second Circuit rejected arguments that the IDEA was special because it involved

a multi-tiered administrative process, and that rejecting the catalyst theory would encourage

parents not to settle controversies at the IEP stage. *Id.* at 124. First, the court specifically

took note of the fact that the ADA, at issue in *Buckhannon,* also involves a multi-tiered

administrative process. *Id.* Second, the court recognized that the IEP is an informal process

designed for compromise, not confrontation, and that Congress, before *Buckhannon,*

prohibited a recovery of attorney's fees for participation in IEP meetings. *Id.* (citing 20

17

U.S.C. § 1415(i)(3)(D)(ii). Finally, the court rejected the argument that the IEP in this case was more analogous to a consent decree than a private settlement because it is required by statute, and thus, changes the legal relationship of the parties. *Id.* at 125. The court held that the statutory requirement only distinguishes an IEP further from a judicial decree, and it cannot be termed an agreement with judicial sanction. *Id.; see also Akinseye v. D.C.*, 193 F. Supp. 2d 134, 140 (D.D.C. 2002) (following the Second Circuit's precedent absent precedent from the D.C. Circuit).

Thus, precedent in this and other circuits indicates that *Buckhannon* is generally applicable to fee shifting provisions and should be applied to the IDEA fee shifting provision requiring a judicial decree on the merits or a judicially sanctioned consent decree to render a party the prevailing party. This Court will apply *Buckhannon* to the case at bar.

## V. DISCUSSION

The first issue is whether Plaintiffs are prevailing parties under the IDEA. If Plaintiffs are determined to be the prevailing party, the amount of their attorney's fees depends primarily on their degree of success in the litigation.

### A. PLAINTIFFS ARE PREVAILING PARTIES.

As a preliminary issue, the Court will address *Buckhannon's* application to this case. Plaintiff argues that the benefit incurred from the mediation should be considered in determining prevailing party status. As noted earlier, this Court finds prior case law from this district and the words of the Supreme Court persuasive and holds that *Buckhannon*

precludes a settlement from conferring prevailing party status on a plaintiff. Thus, to the extent that the benefits obtained by the Plaintiffs were not part of the IHO's Decision and Order, they are not considered by this Court for fee purposes.

The Plaintiffs must pass a low threshold to be the prevailing party. "[A]t a minimum, to be considered a prevailing party . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Garland,* 489 U.S. at 792. Relying heavily on Supreme Court precedent in the § 1988 context, the Seventh Circuit and the lower district courts have articulated several tests for determining whether a party is a prevailing party. For instance, in *Max M. v. Ill. State Bd. of Educ.* which followed *Hensley's* generous interpretation of prevailing party, the court found that a plaintiff "need not succeed on substantially all significant issues or receive all relief originally sought to qualify as a prevailing party." 684 F. Supp. 514, 524 (N.D. Ill. 1988). However, where a party obtains small, tactical victories, but loses on the main issues, he cannot be considered a prevailing party. *Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U,* 109 F.3d 1250, 1254 (7th Cir. 1997) (quoting *Hunger v. Leininger,* 15 F.3d 664, 670 (7th Cir. 1994)). Furthermore, the district court has recognized at least in one case that "liability on the merits and responsibility for fees go hand in hand." *Petrovich v. Consol. High School Dist. # 230,* 959 F. Supp. 884, 888 (N.D. Ill. 1997) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

In *Max M. v. Ill. State Board of Education,* the plaintiffs presented two claims against

the school district: 1) the district denied a FAPE due to various deficiencies, and 2) the state

board of education's administrative review procedures were improper. 684 F. Supp. at 523.

Most of the first claim and the entire second claim were dismissed. *Id.* The court ultimately

determined, however, that the student was denied a FAPE because the district did not provide

him with psychotherapy. *Id.* Accordingly, the plaintiffs recovered approximately $8,000 for

expenses incurred in obtaining psychotherapy but failed to recover other items of relief. *Id.*

While the plaintiffs recovery was small in light of its request, the court recognized that the

plaintiffs succeeded on one important claim and received some of the benefit they sought in

bringing out the suit. *Id.* at 524. The court held that in light of *Hensley*, it was "compelled

to find that the [plaintiffs] are prevailing parties." *Id.* at 524.

Similar to the plaintiffs in *Max M.*, Plaintiffs in this case achieved some success in

bringing this lawsuit. The IHO altered the legal relationship between the parties when she

ordered: 1) the District to reimburse the Plaintiffs for tutoring while Michael was on home-

based education; 2) the District to reimburse Plaintiffs for half of the cost of the NDC

representative's presence at the IEP meeting; 3) the District to provide an hour of tutoring

services each week for the remainder of the school year; and 4) the District to provide

counseling and training to Plaintiffs according to its resources. Plaintiffs valued these

services at approximately $3,000.00. This relief is enough to meet the threshold of prevailing

party status. The Supreme Court in *Farrar* held that prevailing party status does not turn on

the magnitude of the relief obtained. 506 U.S. 103 at 114. Indeed, Farrar recovered only one

dollar when he asked for seventeen million. *Id.* at 107.

## B. PLAINTIFFS' RECOVERY WAS NOT *DE MINIMIS* AND THEY ARE ENTITLED TO REASONABLE ATTORNEY'S FEES.

Finding Plaintiffs to be prevailing parties does not end the inquiry. *Farrar* made it clear that the court must determine reasonable attorney's fees in light of the result achieved. In some situations, a party who has prevailed may not recover any attorney's fees. 506 U.S. at 115. The lodestar figure is presumed to be a reasonable fee, but a significant factor in shifting the fee award up or down is the "results obtained." *City of Riverside v. Rivera*, 477 U.S. 561, 562 (1986).

While Justice O'Connor's analysis in *Farrar* was not specifically adopted by the Seventh Circuit in the IDEA context, courts in the circuit have employed it and found it useful in determining whether the prevailing party is entitled to fees. *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996). Justice O'Connor suggested three factors to consider in determining reasonable attorney's fees: (1) the difference between the amount recovered and the damages sought, (2) the significance of the legal issue on which the plaintiff prevailed, and (3) the public purpose of the litigation. *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring).

### 1. The Difference Between the Relief Sought and the Amount Recovered

First, this Court will analyze the difference between the relief sought and the amount recovered. The parents identified eight issues for the IHO to address and fourteen items of requested relief. Each will be addressed in turn.

21

The first issue identified was whether the District failed to provide a FAPE to Michael by failing to evaluate his needs after it had notice of behaviors indicating a disability. D&O at 31. The IHO did not find a denial of a FAPE on this issue. She expressly noted that Michael was found eligible for services and was receiving services based on his identified needs, prior to August of 1999. *Id.* The IHO further rejected the allegation the District did not provide a complete evaluation. She found that after the multi-disciplinary conference, the District contacted Dr. Leventhal and paid for an evaluation by him. *Id.* Thus, the parents did not prevail on the first issue.

The second issue raised was that the District denied a FAPE during and after Michael's placement at Parker Junior High by failing to consider an August 1999 report recommending an evaluation by Dr. Leventhal, by failing to develop an appropriate IEP, by failing to provide Michael with a full-day education program, and by failing to provide the services of a full-time aide as indicted in Michael's IEP. D&O at 32. The IHO found that it was the parent's whose request for a new placement (Acacia) initiated the interim movement to Parker and that the District could not be found to have denied a FAPE when it was accommodating the parents' wishes. *Id.* The IHO further rejected the other contentions raised in this issue. D&O at 32-33.

The third issue is whether the District denied a FAPE by violating the IEP procedures by discounting the NDC report at the IEP meeting, and by requiring the parents to present a representative of NDC at the IEP to interpret the report in order for it to be considered.

D&O at 33. The IHO found that the District violated the prior notice provision of the procedure, but that the District did not deny a FAPE by its non-compliance. D&O at 33-34. Furthermore, the IHO found that the District considered but did not accept the outside report for a number of reasons; this failure did not constitute a denial of the parents' ability to participate in the formulation of a FAPE. D&O at 34. Finally, on the issue of presenting the NDC representative, the IHO found that all witnesses were credible and concluded that there must have been a misunderstanding. She ordered the District to reimburse the Plaintiffs for half of the expense of the representative's presence at the meeting. D&O at 35. Thus, although there was no finding of fault on this issue, the District was ordered to reimburse the Plaintiffs. *Id.* The Plaintiffs did experience some success on this claim.

The fourth issue is whether the District intentionally violated the mediation agreement. *Id.* The IHO found that the District did not violate the mediation agreement and did not violate Illinois procedural regulations. D&O at 36.

The fifth issue was whether the District denied a FAPE by denying procedural safeguards such as giving the parents prior written notice when it proposed or refused changes in the evaluation or placement. D&O at 37. Plaintiffs further alleged that the District failed to follow the IEP after the it had notice that the SPEED placement was not adequate, and failed to reconvene the IEP at that point. *Id.* Finally, Plaintiffs argued the District failed to provide appropriate home-based instruction during that time. *Id.* The IHO made a finding that the District violated the prior written notice provision and ordered the

district to develop a procedure and appropriately train its personnel. D&O at 30, 38. In addition, the IHO ordered that the IEP be reconvened. D&O at 38. Finally, the IHO did not find that the home-based instruction denied a FAPE, but that the District should pay for the services of the tutor at the time. D&O at 37. The IHO noted that "[o]rdering the district to pay for services is not a 'punishment' or a finding that the district did not provide a FAPE." *Id.* The IHO expressly mentioned that Michael was removed from school at the suggestion of Dr. Valdivia in order to stabilize his medication. *Id.* Thus, although the IHO did not find that the District denied a FAPE during the home-based instruction time period, the Plaintiffs did receive a benefit by being reimbursed for the tutoring services during this period, and by having the IEP reconvened. The District's compliance with the procedural requirements is addressed below.

The sixth issue is whether the District denied a FAPE during the summer of 2001 when it failed to provide notice of its response to the parent's request for an extended school year program ("ESY"), by failing to inform the parents of the start date and duration of the ESY program, and by failing to provide appropriate education and transportation services during the summer. D&O at 39. The IHO found that the mother wanted a longer duration of the ESY program and the District accommodated her request even though it felt that it was not warranted. *Id.* There was no finding of a denial of a FAPE on this issue; thus, the Plaintiffs did not prevail on the sixth issue. *Id.*

The seventh issue was whether the District intentionally or recklessly discriminated

against the student because of his disability or his parent's advocacy by repeatedly delaying the identification and provision of services. *Id*. The IHO determined that there was no evidence of discrimination toward the student, and that there was no delay or denial of services. *Id*.

The final issue was whether the District denied a FAPE because the IEP was inappropriate and failed to respond to Michael's needs, and because the District withheld needed special education services that would have benefitted Michael. D&O at 40. The IHO found that there was no denial of FAPE regarding the sufficiency of the IEP. *Id*.

In sum, the IHO found no denial of a FAPE on any of the eight issues raised by the Plaintiffs. The hearing officer, however, did grant relief on several issues including: (1) reimbursement of half the cost of providing an NDC representative at the IEP meeting, (2) an order to reconvene the IEP, (3) an order that the District develop a policy and train staff on the prior written notice requirement, and (4) that the District reimburse the parents for the cost of the home-based education tutor while Michael was on home-bound instruction. The Plaintiffs received partial relief on four of the eight issues it raised.

In addition, the Plaintiffs requested fourteen items of relief. Each will be briefly discussed in turn. The parents first asked for a finding that the District acted with deliberate indifference and intentionally or recklessly violated procedural safeguards and denied a FAPE. D&O at 40-41. The IHO found that there was no denial of a FAPE and that the evidence did not support a finding of deliberate indifference. D&O at 40. Second, Plaintiffs

requested that the IHO order the District to comply with procedural safeguards regarding the handling of educational records and the prior written notice requirement. *Id.* The IHO found no evidence that procedural safeguards regarding the handling of educational records were not followed. D&O at 42. Moreover, the prior written notice requirement was addressed in the parent's fifth issue, and the IHO ordered the District to develop and train its staff on the procedural requirement. *Id.* The IHO did not find, however, that the failure to comply with the requirement denied a FAPE. *Id.* Third, Plaintiffs requested an order for the reimbursement of the NDC diagnosis and for the services of the representative at the IEP meeting. *Id.* The IHO found that there was no evidence to support a finding that the District had an obligation to fund the NDC diagnosis, but in connection with the third issue discussed above, the IHO ordered the District to reimburse Plaintiffs for half of the cost of the representative. *Id.*

The fourth requested relief was reimbursement of the services of the Learning Clinic. D&O at 43. This also was addressed in the fifth issue above and the District was ordered to reimburse the parents for the home-based education tutor, Judith McCormick. *Id.* Fifth, the parents asked the District to provide outside social language programming. The IHO found that the evidence did not support a finding that this was needed. *Id.* Sixth, the parents requested an order for outside social language therapy. D&O at 43-44. The IHO found that there was no evidence to support a need for such therapy. D&O at 44. The Plaintiff next requested a finding that Michael needs year-round social interaction and skills services. *Id.*

26

The IHO adopted Dr. Leventhal's opinion that the District has an obligation to coordinate with outside activities such as sports and other recreational activities. *Id.* In response, the IHO ordered that the District should research available opportunities and help find funding sources for the parents. *Id.* The eighth requested form of relief was for year-round social skills training and therapy. *Id.* The IHO ordered the District to research and coordinate these activities and identify possible funding sources, but the IHO found no duty on behalf of the District to fund these activities. D&O at 44-45.

The ninth item of relief requested was that the District convene an IEP and that the District provide "continuous, full-day, summer services." D&O at 45. The IHO ordered the reconvening of the IEP in accord with the fifth issue. The IHO recognized that Michael would be graduating at the end of the year, and the possibility that the school would no longer have a legal obligation to provide services to him. She ordered summer services only to the extent provided by law and suggested that the family and the district work together to prepare Michael for his transition to a new program. *Id.* Tenth, the parents requested an order that the District provide outside parent training. *Id.* The IHO found that the need for outside parent training was not supported by the evidence, but that the District should develop a plan for the parents to observe the classroom techniques and spend time with the teachers outside class discussing their techniques. D&O at 45-46. The parent's eleventh request was for an order that the District provide outside family counseling. D&O at 46. The IHO found that no evidence supported such a request, but to the extent that the District has

a staff person available for such counseling, one should be provided. *Id.*

The twelfth request was for the provision of compensatory education for the periods that Michael was deprived of educational opportunity and for the time the parents were denied the opportunity to participate in the formulation of a FAPE. D&O at 46-47. The IHO found that the evidence did not support such a finding and found that the current educational placement was satisfactory. D&O at 47. However, in light of the student's short time remaining at the current placement, the IHO found that he would benefit from tutoring by the same teacher who provided the home-based services for an hour per week, to be funded by the District. *Id.* The thirteenth item of relief requested was for an order granting transportation related services. *Id.* The IHO found that transportation was no longer an issue. D&O at 48. The final item of requested relief was for the IHO to order the District to conduct an IEP meeting with a consultation of an autism expert. The IHO referred to her earlier order that an IEP be convened, but found no further need for an autism consultant because Dr. Leventhal indicated he is available for questions by phone.

In sum, in addition to the relief granted under the issues presented by Plaintiffs, the parents received: (1) summer services to the extent the District is required by law to provide them, and a suggestion that the District and family work together to transition Michael to a new placement, (2) an order that the District research outside activities and funding for such activities, (3) an order for in-school training with Michael's teachers, (4) family counseling to the extent that the District has appropriate staff available, and (5) tutoring services from

the same teacher who completed home-bound instruction with Michael for up to one hour per week, funded by the District. Although there was no finding of fault on the part of the District, the Plaintiffs did receive partial benefit on five of its fourteen requested items of relief.

To be sure, Plaintiffs' recovery is small in comparison to their requested relief. In total, they received partial recovery on nine of twenty-one issues and items of requested relief, but not on their major claims. Plaintiffs suggested that the value of the services received was approximately $3,000.00. Although much less than they requested, this is not *de minimis*. Regarding the procedural prior written notice order, the Plaintiffs, received no practical benefit. The District resubmitted its current policy to the Illinois State Board of Education who approved the plan as is. Additionally, the Board did not indicate that further staff training was necessary. Def. Ex. A. ¶ 12-15.

## 2.    The Significance of the Legal Issues on Which the Plaintiff Prevailed

The second step in the analysis is "the significance of the legal issue on which the plaintiff claims to have prevailed." *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring). Plaintiffs argue that the relief was a substantial benefit to them. However, the IHO found no denial of a FAPE on any issue, and no liability on the District. The IHO ordered relief that will significantly alter Michael's educational plan; however, because the IHO found no basis for liability on the District's behalf, the legal issues can not be characterized as significant.

### 3. The Public Purpose of the Litigation

The third factor to consider is the public purpose of litigation. Plaintiffs argue that the IHO's order requiring the District to develop a procedure to comply with the prior written notice requirement and to train its staff accordingly provides a benefit to other children similarly situated. As discussed above, there was no practical benefit, either to the Plaintiffs or to the public. The District superintendent simply resubmitted the current plan to the Illinois State Board of Education which approved the plan and requested no additional measures. Def. Ex. A ¶ 14. Furthermore, the District had already provided training on the requirement to staff and the Board did not indicate that any more training was necessary. Def. Ex A ¶ 15. In the end, the District uses the same procedure it used before this action was initiated. The fact that the IHO ordered the change, without the change actually being implemented or required by the Illinois State Board of Education can not be characterized as conferring any practical benefit on Plaintiffs or other children in the same situation.

The analysis under the O'Connor test reveals that the Plaintiffs' success in the litigation was small, but not so *de minimis* that they are precluded from an award of attorney's fees. *Hensley* recognized that while there is no precise formula for making the fee determination, the "most critical factor is the degree of success obtained." 461 U.S. 424, 436. The Court further explained that when the plaintiff has achieved partial success the district court may attempt to identify precise hours to be eliminated or it "may simply reduce the award to account for the limited success." *Id.* at 436-37. The Court emphasized that the

district court has discretion in this area, but should give a clear explanation for its rationale and make it clear that it "considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437. In light of the factors suggested by Justice O'Connor, the Plaintiffs are entitled to a reasonable fee in light of their limited success in the litigation.

### 4. Calculation of the Lodestar

The "lodestar" amount for fees is obtained by multiplying a reasonable hourly fee by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433. Although in its Motion for Summary Judgment, the District contested the $200.00 hourly fee of Plaintiffs' attorney, it conceded that this was a reasonable hourly rate at oral argument. The Court agrees and finds that the rates of the Plaintiffs' attorneys and the legal assistant are reasonable for attorneys and legal assistants in the same geographical area with similar experience. The District also contests the hours spent on the case by Plaintiffs' attorney. The District contests the total number of hours spent on the due process hearing. After a review of the time sheets of both attorneys, the legal assistant, and the educational consultant, this Court finds that the time is adequately recorded and reasonable in light of the factual complexity of the issues raised in the case.

Plaintiffs attorney, Mr. Thomas, charges $200.00 per hour for legal services and $100.00 per hour for traveling. Mr. Thomas' time records indicate a total of 241 hours in legal services and 21.2 hours in travel time. The total cost of his services relating to the due process hearing is $50,320.00. In addition, Mr. Thomas recorded 37 hours in legal services

31

and 14.8 hours for traveling in relation to the fee portion of the case. Mr. Thomas also spent $150.00 to file the case. His total fee for services in relation to the fee petition is $7,030.00. Mr. Thomas' total fee for his work on the entire case is $57,350.

In addition, the time records of Mr. Thomas' legal assistant indicate a rate of $85.00 per hour for legal services and $35.00 per hour for traveling, in addition to her out-of-pocket expenses. Ms. Morrissy, the legal assistant, documented 192.5 hours in legal services and thirteen hours in travel on the due process portion of the case. She also spent $268.20 in out-of-pocket expenses such as copying. Her total fee for the due process portion of the case is $17,085.70. She also provided services on the fee petition. Although she documented more hours, her records indicate billing for 55.1 hours. The cost of her services on the fee petition is $4,683.50. Thus, the total cost of Ms. Morrissy's services for the case is $21,769.20.

The educational consultant documented 71.25 hours in services and thirteen hours in travel time. She charges $125.00 per hour for consultation and expert services and $60.00 per hour for travel time. Afer subtracting for her undocumented time, the consultant's fee totaled $9,600.00 according to her time sheet.

Mr. Thomas associated with co-counsel, Ms. Bianchin. She charged only for her services on the fee petition. According to her time records, the total time spent in services was 60 hours and the total time in travel was six hours. Ms. Bianchin charges the same hourly rate as Mr. Thomas. The total cost of her services was $12,600.00.

The total charge for legal fees and costs is approximately $101,319.20. In addition

to legal fees and the educational consultant, the Plaintiffs incurred other expert-related costs including: (1) $375.00 for experts from the Neuropsychology Diagnostic Center, (2) $300.00 for Judy McCormick's reading expertise, (3) $450.00 for Dr. Valdivia's psychiatric expertise, and (4) $300.00 for an autism expert. The total cost of this litigation is approximately $102,744.20.

In comparison, the District's attorneys presently maintain a $185.00 hourly rate. The lead attorney in the case received $170.00 per hour until July 2002. The total amount charged to the District for legal services was $43,987.25.[2]

### 5. Reduction in Light of the Limited Success

In this case, the Plaintiffs recovery in the hearing was substantially less than what they asked. Plaintiffs indicate that the approximate value of their recovery was $3,000.00. While in private litigation, an award of attorney's fees in excess of the damage award is not considered reasonable, *Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999), in civil rights cases, an attorney's fee award "may be 'reasonable' even when they exceed the damages recovered . . . ." *Id.* (citing *Riverside v. Rivera*, 477 U.S. 561, 581 (1986)). In *Riverside*, the court specifically recognized the public purpose of the litigation in deterring unlawful police conduct. 477 U.S. at 572. Furthermore, the Seventh Circuit has held that although a court can not "mechanically reduce the lodestar" amount by the percentage of success, "when

---

[2] Plaintiffs contest whether the District's attorney's fee calculation is accurate because it does not reflect same time period for which the Plaintiff submitted records. Deciding this issue is not necessary to the outcome of the case, and this Court declines to address it.

recovery is low *enough* in relation to the demand . . . the judge may jettison the lodestar apparatus and choose an appropriate fee using other means." *Wodziak*, 169 F.3d at 487. In *Wodziak*, the court ultimately held that "[a]lthough the plaintiffs were prevailing parties, the district court readily could have concluded that the only reasonable fee was a percentage of the recovery, as in tort litigation." *Id.* at 489. Finally, the Seventh Circuit has upheld a district court's reduction of attorney's fees when the plaintiff has achieved limited success. *Connolly v. Nat'l. Sch. Bus Service, Inc.,* 177 F.3d 593, 598 (7th Cir. 1999). For factually or legally similar claims the district court is permitted to look at the overall success obtained. *Id.* (citing *Spellan v. Bd. of Educ.,* 59 F.3d 642, 646 (7th Cir. 1995).

In the present case, the facts all centered around the treatment of Michael Kosswenda by the District during a time in which both the parents and the District were unsure of his proper diagnosis. The legal issues centered on whether the District's actions denied a FAPE to Michael. The claims were legally and factually related, making segregation of time spent on unsuccessful claims difficult. This Court considers the overall success of the Plaintiffs in the litigation.

Plaintiffs, without stating a dollar value on their original claim, indicate that they recovered approximately 75% of their request. The District, on the other hand, suggests that the Plaintiffs recovery was closer to 5% of what they requested. Furthermore, the Plaintiffs suggest an inherent difficulty in placing a pecuniary value on the relief they originally requested, but approximated the value of the services they received at $3,000.00. This Court

agrees that while such a valuation may be difficult, some type valuation of success is necessary.

In *Max M.* and other cases, courts have granted a reasonable attorney fee reduced by 50% because of the plaintiff's partial success. *Max M. v. Illinois St. Bd. of Educ.,* 684 F. Supp. 514, 531 (N.D. Ill. 1988); *Connolly v. Nat. Sch. Bus Serv., Inc.,* 177 F.3d at 598 (finding that a fifty percent reduction due to limited success was not an abuse of discretion). Here, a fifty percent reduction in the lodestar would not provide a reasonable fee. Plaintiffs prevailed on none of the issues regarding a denial of a FAPE and were granted relief on fewer than half of their claims. Furthermore, in some instances the relief they were granted was substantially reduced from what was requested. In light of the comparison of the case presented by Plaintiffs to the recovery received, the limited public purpose of the litigation, and minor importance of the legal issues on which the Plaintiffs prevailed, Plaintiffs are granted a total of $18,000.00 as their reasonable attorney's fee and costs.

Plaintiff additionally argued that pursuant to 20 U.S.C. § 1415(i)(3)(G) the Court could not reduce the fee amount. Section 1415(i)(3)(G) provides that the award of attorney's fees can not be reduced when the educational agency unreasonably protracted the litigation or the section was violated. Plaintiffs argue that the order requiring the District to develop a procedure on prior written notice indicated a violation of this section. This Court disagrees. The IHO specifically found that the District's failure on the procedure did not deny a FAPE to Michael, and the District simply re-submitted its current procedure to the Illinois State

35

Board of Education which approved it without amendments.

## VI. CONCLUSION

Plaintiffs passed the threshold of prevailing party status when the hearing officer ordered the District to reimburse half of the cost of the NDC representative, the cost of home-bound education before Michael was admitted to his current school, and the cost of future tutoring services for up to an hour a week for the remainder of the school year, among other orders. This relief was more than *de minimis*. **Plaintiffs are awarded attorney's fees and costs in the amount of $18,000.00. The clerk of the court shall enter a judgment in favor of the Plaintiffs and against the District in the amount of $18,000.00 for attorney's fees and costs.**

**SO ORDERED THIS 24ᵗʰ DAY OF OCTOBER, 2002.**

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Joseph Daniel Thomas
200 S. Michigan Avenue
Suite 1240
Chicago, IL 60604
(312) 296-8203

Sherri Lynn Bianchin
7302 Lakeside
Frankfort, IL 60423
(815) 469-3612

Attorneys for Plaintiff

Justino D. Petrarca
Kevin Bruce Gordon
SCARIANO, HIMES & PETRARCA,
180 N. Stetson
Chicago, IL 60601-6714
(312) 565-3100

Anthony Gael Scariano
Christina Sepiol
SCARIANO, ELLCH, HIMES, SRAGA, &
PETRARCA, CHTD.
1450 Aberdeen Street
Chicago Heights, IL 60411

Attorneys for Defendant

# United States District Court
## Northern District of Illinois
### Eastern Division

Michael Koswenda

v.

Flossmoor School District No. 161

**JUDGMENT IN A CIVIL CASE**

Case Number: 02 C 2192

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐ Decision by Court. This action came to trial before the Court. The issues have been tried and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiffs are awarded attorney's fees and costs in the amount of $18,000.00 and judgment is entered in favor of the Plaintiffs and against the District in the amount of $18,000.00 for attorney's fees and costs

Michael W. Dobbins, Clerk of Court

Date: 10/24/2002

Donna Kuempel, Deputy Clerk